DOWNS, Respondent, *v.* CASSIDY, Appellant.

(No. 3,262.)

(Submitted May 22, 1913.   Decided June 13, 1913.)

[133 Pac. 106.]

*Slander—Complaint—Amendment—Trial—Postponement—Dis-*
*cretion — Evidence—Admissibility—Attorneys—Misconduct—*
*Excessive Verdict—Review.*

Slander—Complaint—Amendment—When Proper.
    1.   Amendment of complaint in an action for slander, by changing the
    statement of the slanderous words from the third to the second person,
    permission to make which was asked at commencement of trial, was
    properly allowed, the change wrought by it not having introduced into
    the pleading a charge of a different slander at another time and place,
    the amendment having amounted to no more than the correction of a
    mistake therein as originally drawn.

Same—Trial—Postponement—Discretion.
    2.   In the absence of an affirmative showing that refusal to postpone
    the trial of a cause on the alleged ground of surprise on account of
    an amendment made to the complaint at its commencement   worked
    prejudice to defendant, the exercise of the discretion lodged in the
    court in the premises is not subject to review.

Same—Trial—Evidence—Objections—When Ineffective.
    3.   After a question asked a witness has been answered, objection that
    the matter brought out is irrelevant and incompetent for any purpose
    comes too late.

Same—Evidence—Admissibility.
    4.   Slanderous words spoken of plaintiff by defendant either before or
    after the date of the charge laid in the complaint are admissible to show
    malice.

Same—Wealth of Defendant—Evidence—Admissibility.
    5.   Evidence of the wealth of defendant in an action for slander is
    admissible, it being an element of aid in determining his social rank
    and influence in society, thus tending to show the extent of the injury
    suffered by plaintiff; where punitive damages are allowed, such evi-
    dence is of assistance in the determination of the extent of the punish-
    ment to be inflicted upon defendant.

Same—Attorneys—Misconduct—What Does not Constitute.
    6.   Evidence of defendant's financial condition having been a proper
    matter of inquiry, the remark of counsel for plaintiff in his opening
    statement that defendant would be shown to be a person of wealth may
    not be said to have been such misconduct as to warrant the granting
    of a new trial, even though no evidence whatever touching the subject
    was later offered by him.

Same—Excessive Damages—Review.
    7.   The amount of damages awarded in an action for slander is a
    matter peculiarly within the discretion of the jury after taking into
    consideration all the circumstances appearing from the evidence, and
    its verdict ($1,000 in this instance), claimed to be excessive, should
    not be disturbed unless the sum awarded is so large as to raise a
    presumption that it was the result of a gross error or of undue motives.

Same.
  8.  Unless, after making due allowance for the superior position occupied by a district judge in the trial of a cause, the supreme court is compelled to the conclusion that he abused his discretion in refusing a new trial asked for on the ground of excessive damages, his action will be affirmed.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Sarah Jane Downs against Charlotte Cassidy for slander.  Plaintiff had judgment.  Defendant appeals from the judgment and from an order denying her a new trial.  Affirmed.

*Messrs. Jesse B. Roote, W. A. Jackson,* and *John A. Shelton,* for Appellant, submitted a brief; *Mr. Shelton* argued the cause orally.

The allowance of the amendment at the trial changing materially the character of the alleged slanderous words set forth in the first cause of action and refusing the application of the defendant for a continuation of the trial was erroneous.  The amendment consisted of a change in the set of words alleged to have been used from the second person to the third person. Under the complaint as it stood before the amendment, evidence of the set of words alleged in the amended complaint would not have been admissible.  (18 Am. & Eng. Ency. of Law, 478, 479; 25 Cyc. 486.)  It is held that if proof of such a different set of words is admitted, it constitutes a fatal variance, and is not proof of the cause of action alleged.  It is upon the same theory that it is held that an amended complaint alleging the use of such a different set of words will not be allowed to be filed.  The utterance of such a different set of words, it is held, constitutes an entirely different cause of action.  (25 Cyc. 470, 471, and cases cited.)  In one of the set of words which witness stated the defendant used was "a son-of-a-bitch."  This was the use of a mere epithet.  The slander alleged is the utterance of words imputing a want of chastity and the commission of the crime of larceny.  One of the sets of words used imputes no crime or breach of chastity, and is not slanderous *per se.*  "It is not actionable merely to call a woman a 'bitch' or a 'slut,'

such words not of themselves imputing a breach of chastity, although if they are used under such circumstances or in such connection as to show that they were intended and understood to mean an imputation of whoredom, they may be actionable." (25 Cyc. 322.)

Proof of the reputed or actual financial condition of the defendant is inadmissible for any purpose, and the assertion in the opening statement of counsel that proof of that character would be produced was improper. While proof is admissible to show the position occupied by the defendant in the community and her influence, for the purpose of showing the effect which her words would be likely to have, proof of her actual or reputed financial condition is inadmissible. Clearly, the possession of means or reputation for the possession of property would not of itself add any weight or give any greater effect to the statements of one person concerning another. According to all of the authorities, proof of the actual wealth of the defendant is inadmissible, and the rule that proof of the reputed wealth of such party is inadmissible is well sustained. (*King* v. *Sassaman* (Tex. Civ. App.), 64 S. W. 937; *Robinson* v. *Eau Claire B. & S. Co.*, 110 Wis. 369, 85 N. W. 983; *Nailor* v. *Powder*, 1 Marv. (Del.) 408, 41 Atl. 88; *Morris* v. *Barker*, 4 Harr. (Del.) 520; *Palmer* v. *Haskins*, 28 Barb. (N. Y.) 90; *Young* v. *Kuhn*, 71 Tex. 645, 9 S. W. 860; *Ware* v. *Cartledge*, 24 Ala. 622, 60 Am. Dec. 489.)

For Respondent, there was a brief by *Messrs. McCaffery & Tyler*, and oral argument by *Mr. G. L. Tyler*.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for slander. Plaintiff had verdict and judgment. The defendant has appealed from the judgment and an order denying her motion for a new trial.

The complaint alleges four causes of action, each counting upon slanderous words spoken falsely and maliciously of and concerning the plaintiff, in the presence of persons named and

unnamed, at various times between August 20 and September 12, 1910. The first count, as originally drawn, charged that the words spoken of and concerning plaintiff were: "She is a bloody whore, and a thief; her son is a bastard and she and her family live like a pack of dogs." The words laid in the other three counts are of like import. The questions submitted for decision arise upon exceptions to the action of the trial court in permitting plaintiff to amend the first count of her complaint and in refusing the defendant a postponement of the trial, to its rulings in admitting and excluding evidence, and to its refusal to grant defendant a new trial on the grounds that counsel for plaintiff was guilty of misconduct during the trial prejudicial to defendant, and that the amount of damages awarded by the jury is excessive.

1. When the cause was called for trial the plaintiff was permitted, over objection by defendants, to amend the complaint by changing the statement of the slanderous words laid in the first count from the third to the second person. Thereupon counsel for defendant orally moved the court for a postponement of the trial. The ground alleged was surprise, but no showing was made other than a statement by counsel that they had made preparation to meet the charge as laid in the original complaint, and that they were not ready with their defense to the charge as laid in the amendment. The court overruled the application and ordered the trial to proceed. Defendant alleges prejudicial error. It is argued that since the amendment amounted to the introduction of an entirely new cause of action, [1] it ought not to have been permitted. The substance of the charge as laid was that the plaintiff was unchaste. The change wrought by the amendment was not to introduce into the complaint a charge of a different slander at another time and place, but merely to modify the language used by the defendant in making the same charge in order to avoid the consequences of a fatal variance at the trial. It was clearly within the discretion of the court under the statute (Rev. Codes, sec. 6589), to permit the amendment in that it amounted to no more than the correction of a mistake in the pleading as originally drawn.

(*Bates* v. *Harrington,* 51 Vt. 1; *Weston* v. *Worden,* 19 Wend.
(N. Y.) 648; *Snediker* v. *Poorbaugh,* 29 Iowa, 488; *Baldwin* v.
*Soule,* 72 Mass. 321; *Barber* v. *Barber,* 33 Conn. 335; *Conroe*
v. *Conroe,* 47 Pa. 198; *Lister* v. *McNeal,* 12 Ind. 302; 13 Ency.
Pl. & Pr. 96; 25 Cyc. 471; Newell on Slander and Libel,
759.) The case is within the rule which this court has con-
stantly observed under similar circumstances. (*Dorais* v. *Doll,*
33 Mont. 314, 83 Pac. 884; *Sandeen* v. *Russell Lumber Co.,* 45
Mont. 273, 122 Pac. 913, and cases cited.) The fact that this
is an action for slander does not make the rule any less ap-
plicable.

The court did not, under the circumstances disclosed, err in
refusing a postponement of the trial. Counsel did not offer to
show that the amendment presented an issue which they were
not fully prepared to meet, or that they did not have at hand
and were ready to introduce all the evidence available in support
**[2]** of the defense. The power to grant or refuse a post-
ponement on any ground is vested in the discretion of the court
(Rev. Codes, sec. 6729). Its exercise in any case is not sub-
ject to review by this court, in the absence of an affirmative show-
ing that the complaining party has suffered prejudice. (*Dorais*
v. *Doll, supra; Jorgenson* v. *Butte etc. Co.,* 13 Mont. 288, 34
Pac. 37; *Montana Ore Pur. Co.* v. *Boston & Mont. etc. Co.,* 27
Mont. 288, 70 Pac. 1114, 22 Morr. Min. Rep. 471; *Christiansen*
v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007.)

2. During the examination of Mary Heaney, a witness for
the plaintiff, she was asked to rehearse statements which she
had heard defendant make concerning the plaintiff on other
occasions than those alleged in the complaint. Her answer was:
"She [defendant] called Mr. Downs a 'son-of-a-bitch,' and Mrs.
Downs 'a damned whore.' " Being asked whether she heard
defendant repeat these words concerning the plaintiff or any
of them subsequent to that time, she answered: "Why, very
often, very often." Counsel then interposed the objection that
words uttered on any other occasion than those charged in the
complaint were irrelevant and incompetent for any purpose.
The objection was overruled. The witness Margaret Brooks,

having been asked similar questions, made similar answers. She was then asked: "Well, would it occur once a week, or—that is, as near as you can recollect—or about how often?" Counsel thereupon interposed the same objection as that interposed to the [3] testimony of Mary Heaney. Assuming that the evidence was incompetent and that the objection of counsel was tantamount to a motion to strike it from the record, the ruling was not erroneous. When a party sits by and allows evidence to go in without objection, he cannot complain that the refusal of the court to strike it out is prejudicial. (*Poindexter & Orr L. S. Co.* v. *Oregon S. L. R. Co.*, 33 Mont. 338, 83 Pac. 886.)

That in so far as the evidence in question cast upon the plaintiff an imputation of unchastity, it was competent, as [4] tending to show that the words laid in the complaint were spoken with malice, all the courts agree. The rule is well established both in this country and in England (25 Cyc. 496; Newell on Slander and Libel, 349, 350; Odgers on Libel and Slander, 275 *et seq.*); and many of the courts hold that any publication importing ill-will and hatred, made before or after the date of the charge laid, may be admitted to show malice, whether it might be made the basis for recovery in a separate action or not. (25 Cyc. 498, 499, and note.)

Complaints as to other rulings upon questions of evidence we do not find of sufficient merit to require special notice.

3. During the course of his opening statement to the jury, Mr. McCaffery, one of counsel for plaintiff, said: "We will show you, gentlemen of the jury, that the reputed wealth of this defendant is in the neighborhood of $40,000; and if Mr. Roote [one of counsel for defendant] objects to this we will bring it [more] closer than that." Counsel for defendant took exception to this statement as misconduct. It is argued that since evidence either of the wealth or reputed wealth of defendant is not admissible for any purpose during the trial, the statement of counsel was such an irregularity as prevented the defendant from having a fair trial. The plaintiff did not offer any evidence as to the actual or reputed financial condition of the defendant. Indeed, so far as there is any evidence on the subject,

it tends to show that the defendant is in comparatively modest circumstances. While the decisions of the courts are not entirely [5] harmonious, by the great weight of authority evidence of the financial condition of the defendant is admissible, on the ground that his wealth is an element which aids in determining his social rank and influence in society, and therefore tends to show the extent of the injury suffered by his words; and where punitive damages are allowed, it aids the jury in determining the extent of the punishment to be inflicted upon the defendant. (Newell on Slander and Libel, 878, and cases cited in footnote; see, also, *Jones & Bro.* v. *Greeley,* 25 Fla. 629, 6 South. 448; *Kidder* v. *Bacon,* 74 Vt. 263, 52 Atl. 322; *Buckley* v. *Knapp,* 48 Mo. 152; *Burckhalter* v. *Coward,* 16 S. C. 435; *M'Almont* v. *McClelland,* 14 Serg. & R. (Pa.) 359; *Adcock* v. *Marsh,* 30 N. C. 360; *Brown* v. *Barnes,* 39 Mich. 211, 33 Am. Rep. 375, and notes.)

In *Stanwood* v. *Whitmore,* 63 Me. 209, it was said: "We think, however, that the wealth of a defendant should be proved by general evidence rather than by particular facts. It is the defendant's position in society which gives his slanderous statements character and weight. Reputation for wealth, rather than its possession, generally confers position. Therefore, the more proper inquiry is as to the reputation of a defendant for wealth. Of course, a presiding justice would have considerable discretion as to the form of a question in such a case, to be exercised according to circumstances." Under these authorities, counsel [6] was justified in his opening statement in proceeding upon the assumption that the evidence would be admitted, if offered, and it cannot be held to be misconduct on his part that he then expressed the intention to introduce it but later changed his mind, whatever reason he may have had for his subsequent action.

4. The jury fixed the amount of damages on each count at $250, making the amount of the verdict $1,000. It is argued that since it appears from the evidence that the slanderous words were heard by comparatively few persons, that all the witnesses who gave testimony against the defendant were unfriendly, that the parties are persons of humble position in the community

in which they reside, that defendant had some provocation be-
cause the plaintiff and her husband, who had been tenants of
defendant, abandoned their tenancy leaving a balance of the
rent and a small debt for borrowed money unpaid, and that
it does not appear that defendant is in affluent circumstances,
the amount of the verdict is manifestly excessive. It is true
that the parties are of comparatively humble station, and that
the slanders were circulated among a small number of people
in the community; yet, as was remarked by the court of the
defendant in *Casey* v. *Hulgan*, 118 Ind. 590, 21 N. E. 322, the
defendant was not troubled with a stammering tongue nor was
she slow of speech. She was evidently actuated by a spirit of
malevolence toward plaintiff, as appears from the many repeti-
tions of words of the same import as those laid in the complaint.
While she may have had some cause to complain that plaintiff's
husband did not promptly pay the balance of the indebtedness
due her, the jury were justified in the conclusion that his de-
linquency in this regard was to be attributed to his inability
rather than any disinclination to do so. His income consisted
of his daily wages as a miner, and during the latter part of the
tenancy his expenses had been materially increased by the illness
and death of a son. In any event, his failure to discharge his
debt was no justification for the vicious, groundless assault made
by the defendant upon the character of the plaintiff, to this
extent destroying the only possession of substantial value which
she apparently had. She was entitled upon the evidence to re-
cover substantial damages, and, in the discretion of the jury,
punitive damages also. In such cases there is no accurate stand-
ard by which to measure the injury. The amount to be awarded
[7] is peculiarly within the discretion of the jury after taking
into consideration all the circumstances appearing from the
evidence. The court ought not to interfere unless the sum
awarded is so large as to raise a presumption that the amount
fixed was due to some gross error on the part of the jury, arising
out of a misconception of the case or the result of undue motives.
(Newell on Slander and Libel, 848.) Furthermore, the dis-
cretion of the trial court in granting or refusing a new trial

on the ground urged here is moved by several considerations which this court cannot take into account. Among these is a personal view by the trial judge of the parties and their witnesses. His action must, therefore, be accepted as final unless after making due allowance for the superior position he occupies toward the case, this court is compelled to the conclusion that he has been guilty of an abuse of discretion. While upon the whole case disclosed by the evidence we doubt whether the jury should not have found a less sum, the existence of this doubt is itself sufficient to rebut any presumption, which might otherwise be indulged, that the trial court was guilty of a manifest abuse of discretion in refusing to grant a new trial.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Holloway and Mr. Justice Sanner concur.